UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE ADELPHIA COMMUNICATIONS       :      03 MDL 1529 (LMM)
CORPORATION SECURITIES AND          :
DERIVATIVE LITIGATION               :      MEMORANDUM AND ORDER
                                    :
------------------------------------x
                                    :
THIS DOCUMENT RELATES TO            :
04 Civ. 10252                       :
                                    :
------------------------------------x

McKENNA, D.J.,

**1.**

This action -- <u>Los Angeles County Employees Retirement</u>
<u>Association, et al. v. Motorola, Inc., Scientific-Atlanta, Inc.,</u>
<u>Wallace Haislip and Julian Eidson</u> (04 Civ. 10252) --was filed in
the Superior Court for the State of California for the County of
Los Angeles, Central District, removed to the United States
District Court for the Central District of California (Western
Division), and transferred to this district for inclusion in the
above-identified multidistrict litigation.[1]

Adelphia Communications Corporation ("Adelphia") was a
provider of cable television.  The corporate defendants,
Scientific-Atlanta, Inc. ("SA") and Motorola, Inc. ("Motorola")
manufactured cable converters (set top boxes) necessary for cable

---

[1] Plaintiff's motion for remand and abstention was denied in 2005.
<u>In re Adelphia Communications Corp. Sec. & Deriv. Litig.</u>, No. 03 MDL
1529, 2005 WL 1404798 (S.D.N.Y. June 14, 2005).

customers to watch cable programming.[2]  Adelphia, SA and Motorola

entered into arrangements described as follows in the Complaint:

> Pursuant to the scheme, Motorola and S-A purported to make "marketing support" payments to Adelphia, which Adelphia then recorded as contra-expenses on its books, thereby reducing its reported expenses and increasing its reported EBITDA.  However, the marketing support payments were merely sham transactions with no economic substance. Specifically, at the same time they were purportedly making these marketing support payments, S-A and Motorola imposed fictitious retroactive price increases for digital cable converter boxes already sold to (or contracted to be sold to) Adelphia, which were identical in amount to the purported marketing support payments, thus creating a "wash" in which no economic value was transferred.  Defendants knew that these transactions lacked any economic substance and that their only purpose was to fraudulently increase Adelphia's reported EBITDA.  With this knowledge, Defendants assisted Adelphia in crafting the transactions and creating bogus documentation in a manner designed to facilitate the fraud and hinder its discovery.

(Complaint, ¶ 2.)[3]  Plaintiffs are purchasers of Adelphia

securities.

**2.**

The complaint alleges claims for (i) aiding and abetting

common law fraud and (ii) conspiracy to commit common law fraud.

---

[2] Defendants Haislip and Eidson were officers of Scientific-Atlanta.

[3] See also this Court's Memorandum and Order of June 16, 2009, in Argent Classic Convertible Arbitrage Fund L.P. v. Scientific-Atlanta, Inc. (04 Civ. 5759), dismissing claims under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 based on the same scheme, pursuant to Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S. Ct. 761 (2008).

Defendants move for dismissal on a variety of grounds: that the claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f); that the claims are barred by limitations; that plaintiffs have failed to allege claims on which relief can be granted, and, further, have failed to plead with the particularity required by Fed. R. Civ. P. 9(b); and that plaintiffs have failed to join Adelphia, an indispensable party under id. 12(b)(7) and 19.

On a motion for dismissal under id. 12(b)(6), a court must accept all non-conclusory factual allegations as true, and may consider documents incorporated into the complaint by reference; the plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Communications, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atlantic Corp. V. Twombly, 127 S. Ct. 1955, 1965 (2007) (footnote omitted)).  Rule 9(b) requires that, "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud. . . ."  Id.  "Malice, interest, knowledge, and other conditions of a person's mind may be alleged generally."  Id.

**3.**

Plaintiffs' claims are not preempted by SLUSA because they are not asserted in a "covered class action," 15 U.S.C. § 78bb(f)(5)(B).  "A 'covered class action' is a lawsuit in which

3

damages are sought on behalf of more than 50 people." Merrill
Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 83
(2006) (footnote omitted).   The plaintiffs, however, are some 14
entities -- a public pension fund and a number of funds affiliated
with   Franklin   Templeton   Investments.   Defendants   argue,
nevertheless,   that   the   present   action   is   brought   "on   a
representative basis," 15 U.S.C. § 78bb(f)(5)(B)(i)(II), because
the pension fund has many beneficiaries and the other funds many
investors.   But   there   is   no   logic   or   persuasive   authority
supporting that characterization of the facts.   Nor is there any
logic or persuasive authority to the defendants' alternate argument
that the present action is one of a "group of lawsuits" that are
"joined, consolidated, or otherwise proceed as a single action for
any purpose."   Id. § 78bb(f)(5)(B)(ii)(II).

**4.**

Adelphia is not an indispensable party.   It is a joint
tortfeasor which is not required under Fed. R. Civ. P. 19 to be
joined.   Temple v. Synthes Corp., 498 U.S. 5, 7-8 (1990).

**5.**

In a multidistrict case, "a federal court ruling upon
questions of state law [is required] to apply the same state
substantive law, including choice of law rules, that would have
been applied by a state court in the jurisdiction in which a case
was filed."   Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993).

4

Since the present case was filed in the State of California, the California choice-of-law rule must be determined.

> California has jettisoned the relatively predictable choice of law rules based on the place where the transaction occurred (lex locus) in favor of a three-part governmental interest test. Under this amorphous and somewhat result-oriented approach, we must first consider whether the two states' laws actually differ; if so, we must examine each state's interest in applying its law to determine whether there is a "true conflict"; and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law.

Arno v. Club Med Inc., 22 F.3d 1464, 1467 (9th Cir. 1994) (citations omitted). See also, Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000); Insurance Co. of North America v. Federal Express Corp., 189 F.3d 914, 921 (9th Cir. 1999); Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1506-1507 (9th Cir. 1993); Rosenthal v. Fonda, 862 F.2d 1398, 1400 (9th Cir. 1988); Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1263-1264 (9th Cir. 1978); Hurtado v. Superior Court of Sacramento County, 522 P.2d 666, 669-670 (Cal. 1974); and Bernhard v. Harrah's Club, 546 P.2d 719, 720-721 (Cal. 1976). The governmental interest test is traced back to Reich v. Purcell, 432 P.2d 727 (Cal. 1967). See Hurtado, 522 P.2d at 669.

> Once ... preliminary analysis has identified a true conflict of the governmental interests involved as applied to the parties under the particular circumstances of the case, the 'comparative impairment' approach to the resolution of such conflict seeks to determine which state's interest would be more impaired

> if its policy were subordinated to the policy of the other state.  This analysis proceeds on the principle that true conflicts should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied.

Bernhard, 546 P.2d at 723.

"Generally, the preference is to apply California law, rather than choose the foreign law as a rule of decision. Therefore, if application for a foreign decisional rule will not significantly advance the interests of the foreign state, a California court will conclude that the conflict is 'false' and apply its own law."  Strassberg, 575 F.2d at 1264 (citation omitted).  A party advocating application of the law of a non-forum state bears the burden of demonstrating that the law of the non-forum state should be applied.  Hurtado, 522 P.2d at 670.

The task of choosing the applicable law therefore requires determination, first, of what state or states other than the forum (here, California) may have an interest in the application of its law which could be more impaired than the interest of the forum if the law of the forum were applied, second, whether the law of the non-forum state differs from that of the forum, third, what the interests of the respective states in the application of their own law is, and, fourth, which interest -- that of the forum state or that of the non-forum state -- would be more impaired by the application of the other's law.

6

In addition to California (advocated by plaintiffs) --
where the public pension fund has its principal offices and where
the Franklin Templeton Investment Funds, with which the fund
plaintiffs are affiliated, has its headquarters (see Pl. Mem. at 31
& n.6) -- three other states are suggested as states whose law
should govern here.

Motorola suggests the law of Illinois, where its
principal place of business is located (Complaint ¶ 10), and that
of Pennsylvania, where, during the relevant times referred to in
the complaint, Adelphia had its principal place of business.
(Motorola Mem. at 17-18.)  SA adds Georgia, where its principal
place of business is located.  (Complaint, ¶ 11).[4]

The next step in the California choice-of-law analysis is
to "consider whether the [relevant] states' laws actually differ."
Arno, 22 F.3d at 1467.  Where one state does, and a second does
not, recognize a particular cause of action, that amounts to a
difference of law in this context.  Abogados, 223 F.3d at 935.

Motorola argues that neither Pennsylvania nor Illinois
recognizes a cause of action for aiding and abetting fraud.
(Motorola Mem. at 14; citations omitted).[5]

---

[4] It appears that the individual defendants also reside in Georgia.
(See SA Mem. at 14.)

[5] Defendants do not appear to dispute that California does recognize
a cause of action for aiding and abetting fraud as well as a cause of
action for conspiracy to defraud.   See Neilson v. Union Bank of
California, N.A., 290 F.Supp.2d 1101, 1118 (C.D. Cal. 2003) (aiding and
abetting fraud), and Doctors' Company v. Superior Court, 775 P.2d 508,

This Court has already concluded in a related case that the Pennsylvania Supreme Court would recognize a cause of action for aiding and abetting fraud, see Adelphia Recovery Trust v. Bank of America, N.A., No. 05 Civ. 9050, 2009 WL 1249360, at *12-*14 (S.D.N.Y. May 6, 2009), and adheres to that holding in the present case.

In Cenco, Inc. v. Seidman & Seidman, 686 F.2d 449, 452 (7th Cir. 1982), the Seventh Circuit had said that "[t]here is no tort of aiding and abetting under Illinois law." The Seventh Circuit repeated that view in Renovitch v. Kaufman, 905 F.2d 1040, 1049 (7th Cir. 1990). In 2003, however, the Illinois Appellate Court did recognize a claim, under Illinois law, for aiding and abetting fraud. Thornwood, Inc. v. Jenner & Block, 799 N.E.2d 756 (Ill. App. 2003), app. den., 807 N.E.2d 982 (Ill. 2004). (See discussion in In re Parmalat Sec. Litig., 377 F.Supp.2d 390, 412-414 (S.D.N.Y. 2005)). Based on the thorough and recent review of pertinent authority in Parmalat, this Court concludes that, faced with the question, the highest Court of Illinois would recognize a claim for aiding and abetting fraud.

The situation in Georgia is not (on the cases cited by the parties) as clear as one might wish. In Time Warner Entertainment Co., L.P. v. Six Flags Over Georgia, LLC, the Georgia Court of Appeals reviewed a number of areas in which it had

510-511 (Cal. 1989) (en banc) (conspiracy to defraud).

recognized claims for aiding and abetting various wrongful activities, without mentioning fraud.  537 S.E.2d 397, 407 (Ga. App. 2000).  In R.W. Holdco, Inc. v. Johnson, 601 S.E.2d 177 (Ga. App. 2004), on the other hand, the Georgia Court of Appeals considered a case in which the plaintiff had alleged, inter alia, a claim for aiding and abetting fraud, 601 S.E.2d at 183, and addressed that claim on the merits, without saying it was not cognizable, dismissing it because the claimed fraudulent activity was itself inadequately pleaded.  Id. at 185.

This Court sees no clear indication, and therefore makes no prediction, as to whether Georgia would or would not recognize as a tort the aiding and abetting of fraud, although the Court thinks it possible.

As to plaintiffs' second claim, for conspiracy to commit common law fraud, defendants appear to concede that Pennsylvania, Illinois and Georgia all recognize such a cause of action.  (See Motorola Mem. at 20-21 (citing Pennsylvania and Illinois cases); SA Mem. at 24 (citing Georgia cases).)

So far, it is established that there is no difference between the law of California and that of any of the competing states as to the existence in such states' laws of a cause of action for conspiracy to defraud.  Nor is there a difference between the law of California and that of Pennsylvania or Illinois (as projected by this Court) on the question of the existence of a

cause of action for aiding and abetting fraud.  In these situations there is not a true conflict.

California, on the one hand, and Georgia, on the other, differ on the recognition or not of a cause of action for aiding and abetting fraud, and therefore the states' policies have to be examined.  The Court begins with California.

Motorola argues that "California recognizes three general interests reflected in tort law:  (1) compensation for injured parties; (2) deterrence of illegal conduct; and (3) limitation of damages recoverable."  (Motorola Mem. at 16 (citing Hurtado, 522 P.2d at 672).)  Those interests are "primarily local in character," id., Motorola points out, and "therefore a state's laws generally apply only to compensate its own residents, deter illegal conduct within its borders, and/or protect resident-defendants from excessive damages."  Id.

The deterrence policy, the argument continues, is one of "punishing the 'wrong-doer' and ensuring that he is 'held responsible.'  It is not a policy of ensuring a source of recovery for California residents who cannot recover against a primary tortfeasor."  (Id. (quoting Lomita Land & Water Co. v. Robinson, 97 P.10, 14 (Cal. 1908)) (emphasis omitted)).  Then -- after noting that "aiding and abetting liability is limited to those who provide "knowing" or "deliberate[]" assistance to a tortfeasor (Motorola Mem. at 16), the argument goes on:

10

> If aiding and abetting liability were a burden-
> shifting mechanism aimed at making California
> residents whole, rather than a regulation of in-
> state conduct, then reckless or even negligent
> "aiders and abettors" would have to be held liable
> as well -- otherwise the burden of, for example, a
> bankrupt primary tortfeasor's conduct, would remain
> on the plaintiff.  Because California's cause of
> action is designed to regulate conduct, the state
> has no interest in the alleged conduct in this
> case, all of which took place outside of
> California.

Id. (citing Abogados, 223 F.3d at 935).

This argument (based on a 1908 case decided well before California's adoption of the governmental interest choice-of-law approach, and having nothing to do with it) is not persuasive, because, after acknowledging that "compensation for injured parties" is an objective of California law (Motorola Mem. at 16), that objective is abandoned, and another analyzed, but in isolation.  It is also to the point that "California's general preference is to apply its own law."  American Bank of Commerce v. Corondoni, 169 Cal. App.3d 368, 372 (Ct. App. Second Dist. 1985) (citing Strassberg v. New England Mut. Life Ins. Co., 575 F.2d at 1264).

Most importantly, defendants have not shown that there are policies behind the absence in Georgia of a cause of action for aiding and abetting fraud that would be more impaired by the application of California law than the policy of California law would be impaired by Georgia law (which omits a cause of action endorsed by California).

As to Georgia, SA, citing In re Munford, Inc., 98 F.3d 604 (11th Cir. 1996), points out that Georgia has not recognized a cause of action for aiding and abetting a breach of fiduciary duty. 98 F.3d at 612-613.  Turning to reasons underlying such a rule, the Munford court said that "[t]o hold otherwise [i.e., that there was a cause of action for aiding and abetting breach of fiduciary duty applicable in the case], as the district court found, would enlarge the fiduciary obligations beyond the scope of a confidential or special relationship."  98 F.3d at 613.  If this is the Georgia policy at issue, however, it has nothing to do with a cause of action for aiding and abetting fraud, where the aider/abettor does not have to have a fiduciary obligation to, or be in a confidential or special relationship with, the plaintiffs; SA's argument (SA Mem. at 14-15) is not persuasive.

Since defendants have not made the showing that there is a policy in the law of Georgia that would be impaired by following California law, the conflict between the law of California and that of Georgia is not a true conflict.

The Court concludes that this case is governed by the substantive law of California.

**6.**

Defendants argue that the complaint should be dismissed as barred by the applicable statute of limitations, in their view either the one/three year scheme applicable to federal securities

law claims prior to the 2002 passage of the Sarbanes-Oxley Act (substituting a two/five year scheme), or a two-year Pennsylvania statute of limitations.  (Motorola Mem. at 2-3; SA Mem. at 2-3.)

Neither of the suggested limitation periods applies here: plaintiffs' state law claims are not subject to the federal limitation periods; California, not Pennsylvania, law governs.

Under California law, a three-year statute of limitations applies.  See Cal. Code Civ. Proc. § 338(d) (fraud); Aaroe v. First Am. Title Ins. Co., 222 Cal. App. 3d 124, 128 (Ct. App. First Dist. 1990) (conspiracy to defraud).  No argument has been made by defendants that the complaint is barred by California law, nor could they.  The complaint was filed on September 14, 2004.  (See SA Mem. at 1 n.1.)  Even if the limitations period were properly to be measured from the time of the first revelations about Adelphia "beginning in March 2002" (SA Mem. at 1), a doubtful proposition, the complaint was filed within three years of that date.

**7.**

The California borrowing statute does not apply.  It provides that:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued.

Cal. Code Civ. Proc. § 361.  "Section 361 prevents residents of other states with claims that are barred in the jurisdiction in which they arose from using the California courts to prosecute an action."  Cossman v. DaimlerChrysler Corp., 108 Cal. App. 4th 370 375 (Cal. Ct. App. First Dist. 2003).  Defendants argue that "all of Plaintiffs' claims arose in Pennsylvania" so that the complaint is to be dismissed as to those plaintiffs that are not organized under the laws of California.  (Motorola Reply Mem. at 3.) Defendants do not show, however, that plaintiff's claims arose in Pennsylvania, unless one were to simply and uncritically accept defendants' proposition that "this case is about Adelphia." (Motorola Mem. at 1.)  It is true, of course, that Adelphia is a very significant and necessary part of the background of this case, but Adelphia is not a defendant in it.  The defendants -- Motorola, SA, Mr. Haislip and Mr. Eidson -- are citizens of Illinois or Georgia, as the case may be, and, if the case did not "arise" in California where plaintiffs were injured, it arose in Illinois and/or Georgia, where, however, the applicable statutes of limitation would not bar plaintiffs' claims.  See Ga. Code §§ 9-3-30 and 9-3-96 (four years from discovery), and 735 Ill. Comp. Stat. 5/13-205 (five years from actual or imputed knowledge).

**8.**

In California, "[t]o state a cause of action for fraud, a plaintiff must allege '(a) misrepresentation (false

representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" Neilson v. Union Bank of California, 290 F.Supp.2d 1101, 1140-1141 (C.D. Cal. 2003) (quoting Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 974 (1997)) (other citations omitted).

  "Under California law, '[l]iability may...be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to act or (b) gives substantial assistance to the other in accompanying a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" Neilson, 290 F.Supp.2d at 1118 (quoting Fiol v. Doellstedt, 50 Cal. App. 4th 1318, 1325-1326 (1996)) (other citation omitted). "[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." Neilson, 290 F.Supp.2d at 1135 (citation omitted).

  In California, "'[t]he elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. . . . In such an action the

major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.'" Doctors' Company, 49 Cal.3d at 44 (quoting Mox Incorporated v. Woods, 202 Cal. 675, 677-678 (1927)) (other citation omitted).

As regards plaintiffs' first claim, alleging the aiding and abetting of fraud, defendants object that plaintiffs have failed to allege facts showing that defendants "knew that Adelphia's conduct constituted a breach of duty" and that they "substantially assisted or encouraged Adelphia in committing that breach of duty." (Motorola Mem. at 9 (citing Neilson, 290 F.Supp.2d at 1118).) (See also, SA Mem. at 21, regarding requirements of Rule 9(b).)[6] Plaintiffs, however, do allege such facts, and do so with the particularity required by Fed. R. Civ. P. 9(b).

The complaint does allege that defendants knew that Adelphia's conduct was a breach of duty. Thus, it alleges that "[d]efendants knew Adelphia was engaging in the scheme to inflate

_____

[6] Needless to say, the Court limits its consideration to arguments that the complaint does not state a cause of action under California law.
    The Court does not find defendants arguments that the complaint should be dismissed under Stoneridge, see supra at 2 n.3, persuasive, because that decision applies federal law pertinent to a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, not California law.

its publicity reported earnings and EBITDA and willingly agreed to participate in the scheme." (Comp. ¶ 1.)  It alleges (after a description of the transactions), that "[d]efendants knew that these transactions lacked any economic substance and that their only purpose was to fraudulently increase Adelphia's reported EBITDA." (Id. ¶ 2.)  Knowledge may be alleged "generally."  Fed. R. Civ. P. 9(b).

The complaint also alleges that defendants substantially assisted or encouraged Adelphia in engaging in a breach of duty. The complaint alleges that "[w]ith this knowledge [see the quotation from Complaint ¶ 2, supra], Defendants assisted Adelphia in crafting the transactions and creating bogus documentation in a manner designed to facilitate the fraud and hinder its discovery." (Id.)  (See also, Complaint, ¶ 22.)

Turning to plaintiff's claim for conspiracy to defraud, defendants argue that plaintiffs have failed to adequately allege "(1) the formation and operation of a conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages ensuing from the wrongful conduct."  (Motorola Mem. at 20-21 (citing Applied Equip. Corp. v. Litton Saudi Arabia, Ltd., 869 P.2d 454, 457 (Cal. 1994) (other citation omitted)).  Plaintiffs do allege such facts, however.  The conspiracy is spelled out, in sufficient detail. (See Complaint, ¶¶ 18-32.)

17

Defendants raise a further issue as to the conspiracy claim.  "Even if California law were applicable to Plaintiffs' conspiracy claims, they would nevertheless fail to state a claim because, in order to hold a defendant liable under a civil conspiracy theory, the defendant must be 'legally capable of committing the [underlying] tort.'  In other words, 'he or she [must] owe a duty to the plaintiff recognized by law and [must be] potentially subject to liability for breach of that duty.'" (Motorola Mem. at 23 (quoting Doctors' Company, 775 P.2d at 511, and Allied Equipment, 869 P.2d at 459.)  Plaintiffs cannot satisfy this requirement, defendants argue, because "[p]laintiffs cannot allege that Motorola [or SA] owed them any duty with respect to the financial statements or public reports issued by Adelphia.  Such a duty would only exist if there were a fiduciary or similar relationship of trust and confidence between Motorola [and/or SA] and Adelphia's investors."  (Motorola Mem. at 23 (citing Chiarella v. United States, 445 U.S. 222, 228 (1980))).

Chiarella is not on point because it applies federal law regarding a federal statute, Section 10(b) of the Securities and Exchange Act of 1934, and S.E.C. Rule 10b-5, not California law.

California law, however, requires a closer look.

In Doctors' Company, in which the plaintiff asserted a claim that an insurer, its attorney and an expert witness had conspired to violate a provision of the Insurance Code (making it

18

an unfair practice for an insurer to refrain from attempting to effectuate a prompt and fair settlement of the claim once liability is reasonably clear).  The court pointed out that the duty set forth in the statute "is imposed by statute <u>solely</u> upon persons engaged in the business of insurance."  775 P.2d at 511 (citation omitted).  "Because the noninsurer defendants are not subject to that duty and were acting merely as agents of the insurer 'and not as individuals for their individual advantage," <u>id.</u> (citing <u>Wise v. Southern Pacific Co.</u>, 223 Cal.App.2d 50, 72 (Ct. App. First Dist. 1963), "they cannot be held accountable on a theory of conspiracy." <u>Id.</u> (quoting <u>Gruenberg v. Aetna Ins. Co.</u>, 9 Cal. 3d 566, 576 (1973)).

In <u>Allied Equipment</u>, the California Supreme Court concluded that a party could not, as a matter of law, be held liable for conspiring to interfere with its own contract.  869 P.2d at 456.  "One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms."  <u>Id.</u> at 459.

Tort liability for conspiracy does require "a duty to plaintiff recognized by law," <u>id.</u> at 458, but defendants do not cite authority that such a duty, in order to support a tort claim for conspiracy to defraud, must be grounded on "a fiduciary or

19

similar relationship of trust and confidence." (Motorola Mem. at 23.) A general duty not to defraud is sufficient.

*       *       *

For the reasons set forth above, defendants' motion for dismissal of the complaint is denied.

SO ORDERED.

Dated:  August 5, 2009

Lawrence M. McKenna
U.S.D.J.